IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JENNIFER MONACO,

    Plaintiff,

v.                                                                  Civ. No. 13-1184-RGA

LIMESTONE VETERINARY HOSPITAL,

    Defendant.

---

Jennifer Monaco, Decatur, Georgia. *Pro Se* Plaintiff.

Margaret M. DiBianca, Esquire, Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

January 25, 2016
Wilmington, Delaware

*[signature]*
**ANDREWS, U.S. District Judge:**

Plaintiff Jennifer L. Monaco, who appears *pro se*, filed this action, alleging employment discrimination by reason of disability and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*. (D.I. 2). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Defendant Limestone Veterinary Hospital moves for summary judgment. (D.I. 62). Plaintiff opposes. Briefing on the matter has been completed. (D.I. 63, 68, 69, 70).

## I. LEGAL BACKGROUND

Monaco sought to file a dual charge of discrimination, No. MON020312/846-2012-08719, with the U.S. Equal Employment Opportunity Commission on November 7, 2011, and it was transferred to the Delaware Department of Labor ("DDOL") on February 3, 2012. (D.I. 2-1 at 4, 6). The DDOL notified Monaco on February 7, 2012 that she had not yet filed a formal charge of discrimination and an appointment was scheduled on February 27, 2012 for her to complete the process. (D.I. 63, ex. 13). Monaco perfected the charge of discrimination on March 12, 2012. (D.I. 2-1 at 6). The charge asserts discrimination based upon disability and retaliation, and continuing adverse employment actions that began on May 1, 2011, including failure to accommodate, discharge on October 20, 2011, and a negative reference. (D.I. 2-1 at 6). On March 13, 2012, Limestone was mailed a notice of the charge of discrimination, and it was received on March 14, 2012. (D.I. 2-1 at 3, 6, D.I. 63, ex. 15).

On December 14, 2012, the DDOL issued its finding that there was no probable cause to believe that the law had been violated. (D.I. 2-1 at 13). The EEOC adopted the DDOL's findings, dismissed the charges, and issued a notice of right to sue on April 17, 2013. (D.I. 2-1 at 2, 13). Monaco filed the complaint on July 3, 2013. (D.I. 2).

Monaco suffers from post traumatic stress disorder ("PTSD"). The complaint (D.I. 2) alleges that Limestone created false allegations and would not cooperate with Monaco's physician's orders and this created a situation to make it seem like Limestone had a reason to terminate Monaco's employment. The complaint alleges that Limestone lied to the DDOL to ensure that Monaco would not receive unemployment compensation benefits. Finally, the complaint alleges that Limestone retaliated against Monaco for reporting the PTSD discrimination when it called her new employer and made negative comments about her, thus ending her career.

## II. FACTUAL BACKGROUND

Monaco, who suffers from PTSD, was employed by Limestone, a veterinary hospital located in Hockessin, Delaware, as a veterinary technician from November 25, 2009 through October 20, 2011. (D.I. 63, ex. 1 at ¶¶ 1,3). Dr. Martha Williams, Limestone's owner and principal veterinarian, was Monaco's direct supervisor. (*Id.* at ¶¶ 1, 2, 3). Monaco's job duties included daily interaction with clients and their pets. (*Id.* at ¶ 4).

Monaco's work schedule was modified several times after she submitted doctors' notes. (D.I. 63, ex. 5 at 69). On July 15, 2011, Monaco requested that she work no more than seven hours per day, and she provided a note from her therapist to support the request. (D.I. 63, ex. 4 at D190). Dr. Williams approved the request, and Monaco's work schedule was changed. (D.I. 63, ex. 5 at 69-70-73, ex. 6 at D174-75). On July 28, 2011, Monaco submitted a new note from her therapist that stated that Monaco should continue to work six to seven hours per day, and Dr. Williams approved the request. (D.I. 63, ex. 1 at ¶ 7, ex. 4 at D192, ex. 5 at 69-70-73, ex. 6 at D175-78, ex. 7).

Monaco's therapist cleared her to return to a full-time schedule, effective September 13, 2011, and she returned to a full-time schedule. (D.I. 63, ex. 1 at ¶ 8, ex. 4 at D196, ex. 5 at 70, 73, ex. 6 at D178-81). After her return to a full-time schedule, Monaco asked if she could take two-hour lunch breaks so she could go home and walk TJ, her dog, and the request was approved. (D.I. 63, ex. 1 at ¶ 9, ex. 5 at 72-73, ex. 8).

During her last ten months of employment, Monaco had forty-four absences (many of them for illness or injury) and, in her last month of employment, she had at least seven absences. (D.I. 63, ex. 3). On October 4, 2011, Monaco informed office manager Diane Henry Dussell[1] that she had looked at the schedule and determined there was sufficient coverage of the shift so she was leaving early because she had had no sleep and TJ was sick. (D.I. 63, ex. 1 at ¶ 10, ex. 3 at D124). On October 10, 2011, Monaco called during her lunch break and stated that she would not be back for the rest of her shift. (D.I. 63, ex. 3 at D124). The next day, October 11, 2011, Monaco texted that she was "out sick." (*Id.* at D125). On October 13, 2011, Monaco called in during her lunch break and said she had difficulty returning and was ultimately told there had been cancellations so there was no need to return. (*Id.*). Monaco texted on October 17 and 18, 2011 that she was "out." (*Id.*).

On October 20, 2011, Monaco planned to take an extended lunch break. (D.I. 63, ex. 5 at 43-44, ex. 9 at D379-81). Before leaving, Monaco asked Erin Carter, who was the head technician and Monaco's nursing supervisor, whether she needed to return for the second half of her shift. (D.I. 63, ex. 1 at ¶ 12, ex. 9 at D369 ex. 10).

---

[1] Monaco refers to the office manager as Henry.

3

Carter replied that Monaco needed to return to finish the scheduled shift as she was needed to cover patient rooms while the nurses attended a suture lab being held that afternoon. (D.I. 63, ex. 1 at ¶ 12, ex. 5 at 39, 44, ex. 9 at D369, D372-73, ex. 10).

Monaco left for lunch at 1:00 p.m. and, at approximately 2:30 p.m., she called and spoke with office manager Dussell and told her that she had "run into this guy" who had offered to help her with her finances. (D.I. 63, ex. 5 at 39-40, 45, ex. 9 at D371-72, 376). Monaco explained that she did not think she would "be able to make it back" to work by 4 p.m. (D.I. 63, ex. 9 at D376, 384). Dussell reminded Monaco that there was a suture lab scheduled for that afternoon, and Monaco replied that she did not need the practice and was not going to return because something personal had come up. (Id. at D372-73, 385). According to Monaco, Dussell indicated she would tell Dr. Williams and basically hung up on Monaco. (D.I. 63, ex. 5 at 41). Also according to Monaco, the suture lab was irrelevant to her. (Id. at 44). After Dr. Williams spoke to Dussell, and Monaco failed to return to work, Dr. Williams made the decision to terminate Monaco's employment effective immediately. (D.I. 63, ex. 1 at ¶ 14, ex. 9 at D369-70).[2]

In late December 2011, Monaco applied for a job with the University of Pennsylvania Veterinary Hospital ("Penn"). (D.I. 63, ex. 11). Monaco provided Penn with six references, three of whom were Limestone employees. (D.I. 63, ex. 5 at 9-10, 36, Ex. 11). Penn called Limestone to speak to its receptionist Tracy Martin, who Monaco had listed as a personal reference. (D.I. 63, ex. 11). Penn was told that

---

[2] Monaco described the voicemail firing her as, "Dr. Williams saying that since I had decided that I did not need to come back to work that day, that they no longer needed my services or required my services." (D.I. 63, ex. 5 at 41).

Limestone has a policy to only verify dates of employment, and Martin provided verification of Monaco's dates of employment to Penn. (*Id.*) Limestone had no other contact with Penn regarding Monaco's employment or potential employment. (D.I. 63, ex. 1 at ¶¶ 19-20). Dr. Williams was not listed as a reference and was not contacted by Penn for a reference or for any other reason in connection with Monaco's application for employment. (D.I. 63, ex. 1 at ¶¶19-20, ex. 5 at 36-37). Nor did Dr. Williams authorize a member of the Limestone staff to speak with Penn regarding with Monaco's application for employment, other than to verify the dates of her employment. (D.I. 63, ex. 1 at ¶ 20).

Penn's business records indicated that Dr. Stacey Creasey, a former Limestone employee who Monaco has listed as a reference, gave "unsatisfactory" feedback in response to Penn's request.[3] (D.I. 63, ex. 1 at ¶¶ 16, 17; ex. 11; ex. 12). Penn's records indicate that, as a result, on January 13, 2012, it verbally revoked its conditional offer of employment to Monaco, and on February 15, 2012, advised her of the decision in writing. (D.I. 63, exs. 11, 12). According to Dr. Williams, assuming Dr. Creasey spoke to someone at Penn, she did not do so on behalf of Limestone or as its representative, and Limestone did not authorize Dr. Creasey, as an employee of Limestone, to provide any kind of employment reference. (D.I. 63, ex. 1 at ¶ 18).

According to Dr. Williams, she became aware that Monaco had filed a charge of discrimination on or about March 14, 2012 when she received the DDOL's notice of the

---

[3] It is not clear from the record if Dr. Creasey was a current or former Limestone employee when she provided the reference. The record merely refers to her as a former Limestone employee.

5

charge. (*Id.* at ¶ 21). Also according to Dr. Williams, she had no knowledge of the charge of discrimination against Limestone until receipt of the notice. (*Id.*)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

With respect to summary judgment in a discrimination case, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Limestone moves for summary judgment on the grounds that Monaco cannot establish a *prima facie* case of disability discrimination or retaliation and she cannot establish that Limestone's reason for her termination was a pretext

Monaco opposes the motion, but did not support her position in opposition to the motion for summary judgment as she failed to cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B). Monaco's opposition (D.I. 68) consists solely of argument, without a single cite to the record or the submission of any evidence. Monaco's opposition states that she had only known about the dispositive motion for two weeks, had no access to the full docket, and was unable to provide exact exhibit letters and page numbers of the evidence provided. (D.I. 68 at 2). "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001)

(The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its decision.).[4]

## IV. DISCUSSION

### A. Disability Discrimination

Limestone moves for summary judgment on the grounds that Monaco cannot make a *prima facie* case of disability discrimination and, in the alternative, that she cannot prove that Limestone's stated reasons for its actions are pretextual. A plaintiff may prove disability discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Because Monaco did not present direct evidence of discrimination, she must proceed under the burden-shifting framework. *See Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997). Under this framework, Monaco must first establish a *prima facie* case of discrimination by demonstrating: (1) she is disabled

---

[4] The Court notes that Plaintiff submitted a CD with audio recordings, described as being made during the last two months of her employment. (D.I. 56 & 57). Plaintiff states that the Court will have "hours' worth of audio to review." (D.I. 56). Plaintiff states that the recordings show how badly she was treated and how it stressed her. (*Id.*). These eleven recordings are mostly untitled, undated, and the speakers (which, based on the one I spot-checked, are all female) are unidentified. To be clear, the Court has not listened to the recordings, both because the description of them does not appear to make them a likely source of facts relevant to the issues to be decided, and because it is not the Court's role to marshal evidence in support of Plaintiff's position in the absence of Plaintiff (even a *pro se* plaintiff) doing so. There is a second CD (D.I. 61), which has eight recordings on it. These recordings do all have titles, but the titles, for example, "DDOL Appeal and following conversation with my psychiatrist," or "out for drinks and pizza with the girls after work," do not suggest that they contain any relevant information.

8

within the meaning of the ADA, (2) she is otherwise qualified for the job, and (3) she was subjected to an adverse employment action because of that disability. *McDonnell Douglas*, 411 U.S. at 802; *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006).

If Monaco succeeds in establishing her *prima facie* case, the burden shifts to Limestone to proffer "legitimate non-discriminatory" reasons for its actions. *See Reeves*, 530 U.S. at 142. If Limestone meets this burden, the burden again shifts to Monaco to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, Monaco must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 764 (internal citations and quotation marks omitted)).

For the purposes of this motion, Limestone does not contest that Monaco had a disability and that she was otherwise qualified for her position. Limestone argues, however, that Monaco cannot meet the third prong of the *prima facie* case, that is, that

9

she suffered an adverse employment action as a result of her disability. Monaco responds that she was given work schedules that made her disabilities worse and, when she would not quit, Limestone began creating reasons to make it appear that it had just cause to terminate her, and that it set up Monaco for termination by manipulating the schedule. Monaco argues that office manager Dussell lied about Monaco's statements to her on the day that Monaco's employment was terminated.[5]

The record reflects that Limestone accommodated Monaco's medical condition by providing her with a modified working schedule. Monaco worked on October 20, 2011, left for a two-hour lunch so that she could walk her dog, but later called to say she was unsure if she would be able to return to work that afternoon. When Monaco did not return that afternoon, despite the reminder that a suture lab would be held that afternoon and her presence was needed, her employment was terminated.

It is undisputed that Monaco suffered an adverse employment action when her employment was terminated. However, the record does not reflect that Monaco's termination had anything to do with her disability. Rather, the record reflects that she was terminated when she opted not to return to work after she "ran into a guy" who had offered to help her with her finances. The Court concludes, based upon the evidence

---

[5] The extent of the "lie" seems to be that Dussell said that Monaco refused to come back to work, whereas Monaco says that she would have come back to work had she been directed to do so. It is clear, even under Monaco's version, that she did not want to come back to work, and called Dussell to achieve that end. Monaco's description of the voicemail firing her does not describe the firing as a product of insubordination. Rather, the description (see p.4 n.2 supra) is consistent with Monaco's version of the phone call with Dussell. The exact phrasing of that conversation is immaterial to any issue now being decided.

of record, that no reasonable trier of fact could find that she was fired because of her PTSD and, therefore, she cannot prove the third element of the *prima facie* case. Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Because Monaco failed to establish the elements of her *prima facie* case, the Court will grant Limestone' motion for summary judgment on the disability discrimination claim.

In the alternative, even had Monaco established a *prima facie* case of disability discrimination, she has not produced evidence from which a reasonable juror could find that Limestone's reasons for its employment decisions were pretexts for discrimination. Limestone articulated legitimate, nondiscriminatory reasons for its actions. Monaco did not return to work following her two-hour lunch, even when apprised that there was a suture clinic and she was needed to cover for those employees who attended the clinic. Nothing before the Court contradicts Limestone's proffered reasons for the actions it took. Nor are its proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003).

Monaco has provided no evidence from which a fact-finder could either disbelieve Limestone's articulated reasons, or believe that discriminatory reasons were more likely than not the cause of the employment actions. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence--more than a scintilla but less than a preponderance--which supports each element of her claim to defeat a properly presented motion for summary

judgment). As there is no genuine dispute on the dispositive legal issue of whether Limestone had discriminatory motives, the Court will grant Limestone's motion for summary judgment as to the issue of employment discrimination by reason of disability.

### B. Hostile Work Environment

In her opposition to the motion for summary judgment, Monaco seems to suggest that she was subjected to a hostile work environment. She complains that she had to obtain numerous physicians' notes over an extended period to adjust her work schedule because Limestone refused to comply with written and verbal requests for specific hours while Monaco was trying to get her disabilities under control. (D.I. 68 at 2). Monaco further argues that, while Limestone "technically" complied with the physicians' notes, it did so in such a way as to "get [Monaco] to quit," rather than to allow her to learn to live with and manage her disabilities. (*Id.*).

The ADA protects employees from being subject to a hostile work environment because of their disability. *See Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999). In order to establish a *prima facie* case of a hostile work environment, Monaco must show that she was subject to harassment on the basis of her disability and that "the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." *Stough v. Conductive Techs., Inc.*, 613 F. App'x 145, 149 (3d Cir. 2015) (quoting *Walton*, 168 F.3d at 667). The environment must be shown to have been objectively hostile or abusive, and the plaintiff must have subjectively perceived it as such. *See Walton*, 168 F.3d at 667.

"The standard of liability for a hostile work environment claim [is] known as a 'totality of the circumstances' approach." *Lescoe v. Pennsylvania Dep't of Corrections-SCI Frackville*, 464 F. App'x 50, 54 (3d Cir. 2012) (applying standard to ADA claim) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995)). The "five elements necessary to establish a successful hostile work environment claim [are]: (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person under the same circumstance; and, (5) the existence of respondeat superior liability." *Lescoe*, 464 F. App'x at 54 (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). "[O]ffhand comments [] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Stough*, 613 F. App'x at 149 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Relevant circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Lescoe*, 464 F. App'x at 54 n.8.

Upon review of the record, there is no evidence that comes close to the kind of intentional and pervasive discrimination necessary to support a hostile work environment claim. The records reflects that Monaco's work schedule was adjusted to

accommodate her needs.[6] In addition, Monaco provides no evidence of severe or pervasive workplace harassment. Finally, while Monaco complains that Limestone scheduled her work in a manner that caused more stress, she also states that it complied with physicians' notes.

After viewing the record in the light most favorable to Monaco, and considering the totality of the circumstances, including the paucity of discriminatory incidents, the Court concludes that no reasonable jury could find that the claimed harassment was sufficiently severe or pervasive so as to create a hostile working environment. *See e.g., Mercer v. SEPTA*, 608 F. App'x 60, 64 n.3 (3d Cir. 2015) (in the ADA context, plaintiff failed to point to specific incidents that could have contributed to a hostile work environment claim, and there was no evidence that plaintiff experienced harassment that was "severe or pervasive.").

## C. Retaliation

Finally, Limestone argues that Monaco is unable to establish to establish a *prima facie* case of retaliation because the undisputed record shows that Limestone did not give Monaco a negative reference in January 2012.

To establish a *prima facie* claim of unlawful retaliation, Monaco is required to show that: (1) she engaged in a protected activity; (2) Limestone took an adverse action against her; and (3) there was a causal connection between the protected activity

---

[6]While not related to her disability, Limestone was generous in allowing Monaco to take lengthy lunches so that she could care for her elderly dog.

and the adverse action taken.[7] *See Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). The plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The court examines the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

With respect to the causation prong, the court considers whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006) (explaining that "[t]he ultimate question in any retaliation case is an intent to retaliate vel non"). In assessing this, the Court considers the "temporal proximity" between the plaintiff's protected activity and the employer's allegedly retaliatory response, and "the existence of a pattern of antagonism in the intervening period." *Id.* at 450 (quotations and citations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist.*, 532 U.S. at 273-74 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205,

---

[7]*See Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (describing an adverse employment action).

209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient).

Monaco argues that, because Limestone was not complying with doctors' orders, she contacted several lawyers in July 2011 and this suffices to prove that she was pursuing discrimination charges prior to her discharge in October 2011. (D.I. 68 at 3). Monaco further argues that she followed the direction of the DDOL and proceeded to file for unemployment benefits first, followed by filing the charge of discrimination. (*Id.*)

The evidence of record indicates that following her discharge, Monaco sought employment at Penn in November 2011 and she listed Dr. Creasey as a reference. Dr. Creasey provided a reference via telephone on January 12, 2012, albeit one that "point[ed] out various problems with [] Monaco." (D.I. 63, ex. 11 at 68).[8] It is not disputed that Dr. Creasey's reference was not given by, or on behalf of, Limestone. Therefore, Monaco has failed to show that Limestone took an adverse action against her.

In addition, even if Dr. Creasey's comments are imputed to Limestone, the evidence of record demonstrates that Limestone did not become aware of Monaco's charge of discrimination until March 14, 2012, some two months after the Creasey recommendation. While Monaco argues that she sought counsel prior to the time she sought the Penn employment and that she followed the DDOL's instructions to wait before filing a charge of discrimination, these events are irrelevant since it is undisputed that Limestone was unaware of Monaco's protected activity when Dr. Creasey provided

---

[8] Plaintiff believes that Dr. Creasey "gave [her] an outstanding recommendation." (D.I. 68 at 8). There is no evidence in the record to support this belief.

the unsatisfactory reference. Limestone did not have knowledge of Monaco's charge of discrimination at the time she was terminated in October 2011, or when Penn rescinded its employment offer in January 2012. Instead, Limestone learned of the charge of discrimination some three months after Penn decided not to hire Monaco. Hence, Monaco has failed to show a causal connection between the protected activity and the adverse action taken.

Monaco has failed to establish the necessary elements of her *prima facie* case. Therefore, she cannot succeed on her retaliation claim, and the Court will grant Limestone's motion for summary judgment on the retaliation issue.

## V.    CONCLUSION

For the above reasons, the Court will grant Limestone's motion for summary judgment. (D.I. 62). A separate Order consistent with this Memorandum Opinion will be issued.